RECEIVED

AUG 04 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

ANDREW U. D. STRAW, )
    *Plaintiff,* )
) 17-cv-05714
) Judge Rebecca R. Pallmeyer
v. ) Magistrate Judge Sheila M. Finnegan
)
AMERICAN BAR ASS'N, ) Magistrate Judge
    *Defendant.* )
) Jury Trial Demanded

## COMPLAINT AGAINST RETALIATION ACTIONS OF THE AMERICAN BAR ASSOCIATION AGAINST ANDREW STRAW

Comes *plaintiff* Andrew U. D. Straw, *pro se*, an adjudicated "qualified person with a disability" under the ADA, having been retaliated against for exercising my absolute right to file ADA cases or make ADA complaints, hereby seek justice against the American Bar Association for retaliation against my earlier lawsuit:

## BACKGROUND FACTS

1. I am disabled and the Northern District of Illinois U.S. District Court has adjudicated this fact.[1]

2. My law license was suspended in Indiana on February 14, 2017.

3. The Indiana Supreme Court based its suspension on four "counts," each of which was a disability-related federal lawsuit I filed either on my own behalf or to protect another person's ADA rights.

---

[1] *Straw v. Village of Streamwood, et. al.*, 17-1867 (7th Cir.)

1

4. I have about 10 different state and federal administrative complaints with various agencies due to the discrimination of the Indiana Supreme Court, evidenced in the 180-day suspension.

5. Because I worked at the Indiana Supreme Court and alleged 16 years of discrimination, including violations of my privacy, firing me for taking an FMLA leave, stripping me of handicap parking when I needed it after a car accident on the way to work, I have a "continuing action" EEOC complaint for employment discrimination based on disability.[2]

6. EEOC indicates that the charge was filed on June 1, 2017 and has been assigned to an investigator in Indianapolis.

7. The issue of Indiana Supreme Court disability discrimination against me has arisen in several lawsuits.[3]

8. Unfortunately, in every case, the discrimination was never actually addressed on the merits, instead avoided or blocked based on some other preliminary grounds such as *Rooker-Feldman* or *Younger-Middlesex* or

---

[2] *Straw v. Indiana Supreme Court*, 470-2017-01490 (EEOC)

[3] *Straw v. Sconiers et. al.*, 3:14-cv-01772-JD-CAN (N.D. Ind.); *Straw v. Indiana Supreme Court et. al.*, 1:15-cv-01015-RLY-DKL (S.D. Ind.); *Straw v. Dixon, et. al.*, 3:16-cv-00276-RL-JEM (N.D. Ind.); *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir.); *Straw v. Indiana Supreme Court*, 16-1346 (U.S. Supreme Court); *Straw v. Magnus-Stinson*, 16-1306 (U.S. Supreme Court, on petition for writ of cert.)

*res judicata*. My case for damages and injunctive relief for the suspension as disability discrimination is before the Seventh Circuit U.S. Court of Appeals and I have won on every issue but one: *res judicata*. I have asked for reconsideration and en banc rehearing because the prior lawsuit was dismissed due to the <u>lack of service</u> and that made the rest of the ORDER *dicta*.[4]

9. Please incorporate by reference my Affidavit attached to this pleading. Exhibit 4. It explains the supporting exhibits, which include a letter from the ABA showing that my membership was terminated (Exhibit 1) and an ORDER from the Virginia State Bar utterly rejecting the Indiana Supreme Court discipline and stating that I met my "clear and convincing" evidence burden to show I did not deserve discipline. Exhibit 3.

10. As a matter of fact, there is an even split between the repeat ADA violator Indiana Supreme Court and the Virginia State Bar, with both courts stating "clear and convincing" evidence supported their ORDERs. Exhibit 2.

---

[4] Cf. *Bunker Ramo Corp. v. United Business Forms, Inc.*, 713 F.2d 1272 (7th Cir. 1983) and *Ruiz v. Snohomish*, 824 F.3d 1161 (9th Cir., 2016)

11. This case is about retaliation and the merits of the discipline or even my underlying *ABA* lawsuit are not the purpose of this complaint.

12. My ABA membership was terminated and this fact may not be disputed because the Indiana Supreme Court demanded it to happen.

13. I am suing the ABA for terminating my membership because I sued the ABA earlier about not collecting disability statistics in law school admissions and my demands were to protect both my own and every other disabled person's interest in having a more robust and numerous disabled bar in ***every state***.

14. The ABA regulates law schools in every U.S. state.

15. Some of the law schools the ABA accredits are public schools, and so covered by the ADA, Title II.

16. Harvard Law School's J.D. Admissions office verified on August 1, 2017, that my questions about disability in law school admissions are important and Harvard ***already collects this information*** and can provide it to the ABA when the ABA starts asking for it.  Exhibit 2.

17. The ABA imposed my termination under its rules.

18. The ABA rules state that a lawyer will only be terminated if that lawyer's license is suspended for six months or more.

19. I was suspended in Indiana for **180 days**, which is less than 6 months by a couple of days.

20. Such a harsh penalty must be justified 100% by the facts as applied to the rule, and I simply was not suspended for long enough.

21. I explained this to the ABA and the ABA continued to insist that I should be terminated when the Indiana Supreme Court requested it.

22. I have sued the ABA in the past under the ADA, Titles II and III.[5]

23. Part of the reason for suspending my law license was an Indiana Supreme Court count based on the same ABA lawsuit.

24. For the Indiana Supreme Court to collude with my former defendant, the ABA, to punish me when the punishment was based in part on my lawsuit against that defendant represents **retaliation**.

25. Like with the ABA, the Indiana Supreme Court sought my federal bar licenses to be suspended based on the Indiana suspension. The Indiana Supreme Court was successful in getting my licenses suspended

---

[5] *Straw v. American Bar Association Section of Legal Education and Admission to the Bar et. al.*, 1:14-cv-05194-TMD (N.D. Ill.)

in three U.S. district courts: Northern District of Illinois, Northern District of Indiana, and Southern District of Indiana.[6]

26.  The Indiana Supreme Court has lost multiple ADA lawsuits and paid hundreds of thousands of dollars in settlement. The ABA is cooperating with the repeat ADA violator to injure me.

27.  The "count" cases happened in the Northern District of Indiana and the Northern District of Illinois, so these suspensions, which happened with no hearing, are also collusions and retaliation by the Indiana Supreme Court.

## STANDING AND OTHER LEGAL ARGUMENTS

28.  The U.S. Supreme Court has laid out the requirements for standing in a civil rights act case. *Trafficante v. Metropolitan Life Insurance Company*, 409 U.S. 205 (1972). This Civil Rights Act of 1968 case shows that Article III standing can be created through Congress passing a civil rights act that gives a particular group the right to sue, and violation of the terms of the Act is all the injury an "aggrieved party" needs to show.

---

[6] *In Re Disciplinary Action Andrew U D Straw*, 1:17-mc-00005-TLS (N.D. Ind.); *In Re Andrew U. D. Straw*, 1:17-mc-00013-TWP-DKL (S.D. Ind.); *In the Matter of Andrew Straw, An Attorney*, 17-D-02 (N.D. Ill.)

29. The *Fiedler* case from Maine showed that *Trafficante*'s 9-0 reasoning applies in the case of the ADA. *Fiedler v. Ocean Properties Ltd.*, 683 F. Supp. 57 (D. Maine 2010).

30. The *Trafficante* rule was mentioned positively 20 years later in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

31. It cannot be disputed that I have standing when the defendant terminated my ABA membership at the request of the Indiana Supreme Court, which punished me for my lawsuit against the ABA. Exhibit 5.

32. It cannot be disputed that the entire disciplinary proceeding was initiated by the ADA Coordinator of the Indiana Supreme Court reacting and retaliating against my ADA complaints days earlier about that state court, her employer. Exhibit 6.

33. I have the right to compensatory damages under the ADA, Title II, per *Barnes v. Gorman*, 536 U.S. 181 (2002) and the retaliation must also be compensated under Title II, as per Title V.

34. Retaliation against an ADA complaint or lawsuit is illegal. 42 U.S.C. § 12203 prohibits retaliation, interference, coercion, and intimidations.

7

35. Terminating my membership is retaliation and interference with my efforts to reform disability law at the ABA, including the statistics gathered by the ABA.

36. 42 U.S.C. § 12203(c) explains that the remedies available for retaliation, interference, coercion, and intimidation are those found in Title II in a case such as this with public law school regulation as the foundation.

37. The public law schools have no immunity under the ADA, Title II: 42 U.S.C. § 12202.

38. Filing an ADA lawsuit or making a complaint is a right under the Act, no matter how the complaint or lawsuit is resolved ultimately. Simply filing is a right. The right against retaliation for having done so is extremely broad and explained in 28 C.F.R. § 35.134 and the DOJ technical assistance manual found here: http://www.ada.gov/reg2.htm The explanation of how a private entity like the ABA cannot retaliate is found here:

> §35.134 Retaliation or coercion.
>
> Section 35.134 implements section 503 of the ADA, which prohibits retaliation against any individual who exercises his or her rights under the Act. This section is unchanged from the proposed rule. Paragraph (a) of §35.134 provides that **no private or public entity**

shall discriminate against any individual because that individual has exercised his or her right to oppose any act or practice made unlawful by this part, or because that individual **made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the Act or this part.**

Paragraph (b) provides that **no private or public entity** shall coerce, intimidate, threaten, or **interfere** with any individual in the exercise of his or her rights under this part or because that individual **aided or encouraged any other individual** in the exercise or enjoyment of any right granted or protected by the Act or this part.

This section protects not only individuals who allege a violation of the Act or this part, but also **any individuals who support or assist them**. This section applies to **all investigations or proceedings** initiated under the Act or this part **without regard to the ultimate resolution of the underlying allegations**. Because this section prohibits *any* **act of retaliation or coercion** in response to an individual's effort to exercise rights established by the Act and this part (or to support the efforts of another individual), the section applies not only to public entities subject to this part, but also to persons acting in an individual capacity or to **private entities**. For example, it would be a violation of the Act and this part for a private individual to harass or intimidate an individual with a disability in an effort to prevent that individual from attending a concert in a State-owned park. It would, likewise, be a violation of the Act and this part for a private entity to take adverse action against an employee who appeared as a witness on behalf of an individual who sought to enforce the Act.

**COUNT I: RETALIATION BASED ON ABA CASE & TERMINATION**

39. I had a right to file the *ABA* case to obtain disability statistics in law school admissions and I filed the case under the ADA, Title II and III because the ABA regulates all accredited law schools, public and private.

My success will help increase the disability bar in all 50 states and will help all disabled people have better access to justice. The violation in retaliating is to every disabled American and should be compensated accordingly as I step forward for their ADA rights. Regardless of the outcome in that case, which incidentally did not involve any sanction or fine by the federal judge, I had the right to file the case and the right not to experience any retaliation of any kind for having done so.

40. The Indiana Supreme Court convinced the ABA to terminate my license and this prevented me from participating in law reform on this and other topics at the ABA. In October 2016, my proposal regarding the statistics was taken up and considered by the ABA, and this shows the legitimacy of my request. ABA refused to start gathering the statistics, again.

41. Damages must include emotional distress, humiliation, damage to my ability to influence disability law reform, and any other damages I may prove at trial. Retaliation is prohibited for the reasons given above and those anti-retaliation legal grounds justify relief.

## PRAYER FOR RELIEF

42. The Indiana Supreme Court is a repeat offender of the ADA, Title II, and has lost multiple ADA lawsuits,[7] paying hundreds of thousands of dollars in settlements to people with much lighter violations than I have suffered from this former employer. I broke both my legs and my pelvis and nose serving this Supreme Court and my reward was to be betrayed by its ADA Coordinator in multiple ways.[8] There is no excuse for what the Indiana Supreme Court did to me.

43. There is no excuse for the ABA cooperating with such an ADA violator that has retaliated against my lawsuit against the ABA. The ABA must now pay for that collusion and the retaliation that resulted.

44. I seek an injunction under 42 U.S.C. §§ 12132, 12133, 12203, and 28 C.F.R. § 35.134 to force the ABA to restore my membership and apologize for this retaliation. I ask that the ABA stop moderating my posts to the 3-D listserv, the only ABA public forum where lawyers can discuss disability law and reform. I ask that the ABA make me a member of its Commission on Disability Rights and its Section on Legal Education

---

[7] For instance: *Prakel v. Indiana*, 100 F.Supp.3d 661 (2015); *Perdue v. Individual Members of Indiana State Bd. of Law Examiners*, 266 F.R.D. 215 (S.D. Ind. 2010)
[8] *Straw v. Indiana Supreme Court*, 1:17-cv-2513-RLY (S.D. Ind.); *Straw v. Indiana Supreme Court, et. al.*, 17-1338 (7th Cir.)

and Admission to the Bar, both of which have been denied to me when I applied. As a preliminary injunction matter, I ask the Court to protect me so that the damage does not increase with any more abuse, in whatever form.

45. The following is the rule for seeking an injunction:[9]

> "To obtain a preliminary injunction, the moving party must show that its case has '**some likelihood of success on the merits**' and that it has 'no adequate remedy at law and will suffer irreparable harm if a preliminary injunction is denied.'" *Stuller, Inc. v. Steak N Shake Enters., Inc.*, 695 F.3d 676, 678 (7th Cir. 2012) (quoting *Ezell v. City of Chi.*, 651 F.3d 684, 694 (7th Cir. 2011)). "If the moving party meets these threshold requirements, the district court 'must consider the **irreparable harm** that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied.'" *Stuller*, 695 F.3d at 678 (quoting *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "The district court must also consider the **public interest** in granting or denying an injunction." *Stuller*, 695 F.3d at 678.
>
> "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "Preliminary relief is properly sought only to avert irreparable harm to the moving party." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 944 (7th Cir. 2006).

---

[9] *Straw v. Indiana Supreme Court, et. al.*, 1:16-cv-03483-JMS-TAB (S.D. Ind.), Dkt. 28, pages 2-3.

46. If my evidence shows that I have some chance of success on the merits from the retaliatory actions of the defendant (ABA membership terminated), no adequate remedy at law and irreparable harm is likely, my situation satisfies the *Stuller* test. I believe this to be so because money damages alone will not restore my ABA membership or put me on the governing bodies I have requested.

47. The ABA governs law schools and has a special dispensation from the U.S. Department of Education to do that. The ABA is not merely a private entity and its discrimination has wide impacts over the entire nation.

48. Balancing **irreparable harm** of each side is easy. My having an ABA membership means a lot to me because I participate there to increase disability rights. The ABA has no interest in excluding me, and doing so participates in the discrimination of the Indiana Supreme Court in every area in which that court discriminated against me. There is a strong public interest in restoring me and preventing any further harms. I have demonstrated that my aims are to increase "access and opportunity" for every disabled person in the United States and that is the motto of my

political party.[10] That is why I sued the ABA and top law schools to start collecting the statistics. Harvard Law School already collects this information and told me it is ready to provide it to the ABA if they would start asking for it. The ABA is lagging behind and punishing me in collusion with a repeat ADA violator. It's not right.

49. Lawyers with disabilities are as important for the civil rights well-being of all disabled Americans as Thurgood Marshall was for the black civil rights movement. If one of the persons who comes through the system now is a Thurgood Marshall for disability rights, I will feel absolutely elated that I was able to help open that door.

50. Being forced to stop abusing me will not even impose a light burden on the defendant. Injunction relief is needed and appropriate.

51. I ask for compensation under *Barnes v. Gorman*, 536 U.S. 181 (2002), to pay for the injuries to me from the retaliation and to make me whole. I demand **$1 million** in compensatory damages because I have been seeking a more robust and numerous disabled bar for the benefit of every disabled person in all 50 states, and retaliated against in return.

---

[10] *Straw v. Indiana*, 1:17-cv-1797-WTL-DML (S.D. Ind.). *IFP* was granted in this case in July 2017.

The injury to me and to every other disabled person is easily justified by the result in *Barnes v. Gorman*, 536 U.S. 181 (2002), where a disabled man was mistreated by police on one occasion and he received $1 million. The damage to me is perpetual.

52. **The damages from retaliation are severe.** They demonstrate that the defendant has no remorse and will keep violating the law and injuring me indefinitely, damaging me as a civil rights leader and law reformer, regardless of my rights as a disabled person and lawyer.

53. The defendant, cooperating with **a repeat ADA offender**, is aligning itself with every violator I have ever opposed. I ask a jury to send a clear message that this will NEVER be tolerated and that my federal rights are secure in the State of Illinois.

54. I ask any other relief that this Court and a jury may deem fitting under the circumstances.

## JURISDICTION AND VENUE

55. This Court has jurisdiction over this action under 28 U.S.C. § 1331, as it contains federal questions based on the Americans with Disabilities Act, Titles II & V and 28 C.F.R. § 35.134.

56. Venue properly lies in the Northern District of Illinois under 28 U.S.C. §1391(b), as a substantial part of the events giving rise to this action occurred within this district.

I, *plaintiff* Andrew U. D. Straw, certify that to the best of my knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that the above statements and factual representations are true and correct under penalty of perjury. Dated: August 1, 2017

Respectfully submitted,

s/ ANDREW U. D. STRAW

1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333   Fax: (877) 310-9097
andrew@andrewstraw.com

## CERTIFICATE OF SERVICE

I, *plaintiff* Andrew U. D. Straw, certify that I filed the above COMPLAINT and supporting EXHIBITS and CIVIL COVERSHEET with the Clerk of this Court via U.S. Mail, postage pre-paid on August 1, 2017, and all pleadings will be served on all attorneys of record as well as permanently available through Pacer.gov. I will file an IFP motion and PROPOSED SUMMONS separately with a motion for the U.S. Marshal and U.S. Marshall Form 285 to serve these pleadings due to my poverty status.

Respectfully submitted,

s/ ANDREW U. D. STRAW
1900 E. Golf Rd., Suite 950A
Schaumburg, IL 60173
Telephone: (312) 985-7333
Fax: (877) 310-9097
andrew@andrewstraw.com
*Plaintiff*, Proceeding *Pro Se*

American Bar Association
321 N. Clark Street
Chicago, IL 60654
(312) 988-5000

August 1, 2017